GEORGE COOLIDGE *vs.* WILLIAM T. CHOATE & others.

Game cocks are not implements of gaming, within the meaning of Rev. Sts. *c.* 50, § 19, and *c.* 142, § 2, and cannot be lawfully seized on a warrant commanding the seizure of such implements.

The measure of damages, in an action of trespass for taking, carrying away and destroying game cocks, is their actual value to the plaintiff, as articles of merchandize or sale, whether the market for them is in this State or elsewhere.

TRESPASS for taking, carrying away and destroying eight game cocks. At the trial in the court of common pleas, before *Wells,* C. J. it was in evidence that, on the night of February 3d 1844, the plaintiff had eight game cocks, at a place called the Horn Pond House, in Woburn, in the county of Middlesex, in a room in which there was a cockpit, in which cock-fighting was then carried on; and that some of the defendants then and there took and carried them away, and afterwards destroyed them : It appeared that the defendant Choate was a deputy of the sheriff of Middlesex; and there was evidence tending to prove that Choate went to said house, on said night, in his official capacity, and required the attendance of the other defendants as a posse.

In order to justify the acts charged in the plaintiff's declaration, the defendants offered in evidence, 1st, a sworn complaint made to a justice of the peace for the county of Middlesex, on the 5th of February 1844, conformably to the Rev. Sts. *c.* 50, § 19, and *c.* 142, § 2, alleging that the complainant had probable cause to suspect, and did suspect, that said Horn Pond House was unlawfully used as and for a common gaming house, for the purpose of gaming for money or other

property, and that idle and dissolute persons resorted to the same for that purpose, and praying that a warrant might issue, commanding the sheriff or his deputy, or any constable of Woburn, to enter into said house, and there to arrest all persons who should be there found playing for money or otherwise, and also the keeper of the same, and to take into custody all the implements of gaming as aforesaid, and to keep the said persons and implements, so that they might be forthcoming before said justice, to be dealt with according to law; 2d, a warrant issued by said justice, directed to the sheriff of said county or his deputy, or any constable of Woburn, commanding them forthwith, and with necessary assistants, to enter into said house, and there to search for implements of gaming, and there to arrest all persons who should be found playing for money, &c. (according to the prayer of the complaint;) 3d, a return of said warrant, made by the defendant Choate, that he had taken the bodies of seven persons, (named,) and also twenty four game cocks, and a cockpit, and had them before said justice, for the purpose mentioned in the warrant; 4th, a copy of the record of the said justice as follows: "Middlesex ss. February 5, 1844. Having heard credible witnesses, duly sworn to testify the truth, the whole truth, and nothing but the truth, in relation to the premises, it is considered by me that the said game cocks and cockpit are instruments of gambling, and were, at the time of their taking by the officer, actually used in unlawful games in the said tavern house, and it is therefore ordered by me, that the said game cocks and cockpit be destroyed, as is by law provided."

The judge permitted the said documents to be read to the jury; but he ruled that the defendants were not thereby justified in taking, carrying away or destroying said game cocks, because they were not apparatus or implements of gaming, within the meaning of the Rev. Sts. c. 50, § 19, and c. 142, § 2, in such a sense that they could be seized by an officer on a warrant, or destroyed by order of a magistrate.

On the question of damages, the judge ruled, that if the jury

believed that the defendants acted from good motives, and in the belief that they were in the due execution of legal process, the measure of damages should be the actual value of the property taken and destroyed; that the jury, in determining this value, were not confined to the market value of common fowls, but should allow the plaintiff whatever the game cocks were worth to him, as articles of merchandize or sale, whether the market for them was to be found in this Commonwealth or elsewhere; allowing, if they were sent abroad, a proper deduction for the hazard and expense of their transportation.

. The jury found a verdict for the plaintiff for $75, and the defendants alleged exceptions to the aforesaid rulings.

*Nelson*, for the defendants.

*E. D. Sohier & Welch*, for the plaintiff.

WILDE, J. The defendants' counsel, in support of their exception to the ruling that game cocks are not apparatus or implements of gaming, relies on the Rev. Sts. *c.* 50, § 19, which authorize and require any justice of the peace, or any police court, on complaint made on oath by any person, " that he suspects or has probable cause to suspect, that any house or other building is unlawfully used, as and for a common gaming house, for the purpose of gaming for money or other property," to issue a warrant " commanding the sheriff or his deputy, or any constable, to enter into such house or building, and there to arrest all persons who shall be there found playing for money or otherwise, and to take into their custody all the implements of gaming as aforesaid, and to keep the said persons and implements, so that they may be forthcoming before such justice or police court, to be dealt with according to law." The 142d chapter, §§ 1, 2, also authorizes magistrates to issue warrants to search for and seize (among other things) " any gaming apparatus or implements used, or kept and provided to be used, in unlawful gaming, in any gaming house," &c. ·

It has been argued for the defendants, that fighting or game cocks may be considered as implements of gaming, within

the true construction of the statute ; that all things, by which an illegal game is played, must have been intended to be taken by the officer ; and that, in order to carry out this intent of the law, the meaning of the word "implements" should not be restricted to its strictest sense, but should be enlarged from a literal to a reasonable meaning. But we cannot adopt any such construction of a penal statute. The rule of construction of all penal statutes is well established, and is unquestionable. Where a statute inflicts a penalty or fine on the offender, or a forfeiture of his property, it is to be taken strictly. For it is said, "whenever any ambiguity arises in a statute introducing a new penalty or punishment, the decision shall be on the side of lenity and mercy, or in favor of natural right and liberty ; or, in other words, the decision shall be according to the strict letter, in favor of the subject." 1 Bl. Com. 88, Christian's *note* (19.) But all statutes are to be construed according to the popular meaning of their language, if that meaning can be clearly ascertained, except as to technical terms, which are to be taken in their legal sense. And we are of opinion that the meaning of the word "implements" is clearly ascertained. It is thus defined in Jacob's Law Dictionary : "Things necessary in any trade or mystery, without which the work cannot be performed ; also the furniture of a house, as all household goods, implements, &c. And implements of household are tables, presses, bedsteads, and the like." A similar meaning of the word is given in Williams's and in Tomlins's Law Dictionaries, referred to by the plaintiff's counsel ; and it does not appear that it has ever been used to denote animals or beings having life. In the several statutes cited by the plaintiff's counsel it was manifestly not so used, according to the maxim, *noscitur a sociis.* We are therefore of opinion that the words "implements of gaming" were not intended to include fighting cocks, or any animal or being having life, and that the ruling of the presiding judge at the trial, on this point, is well founded. It is therefore unnecessary to decide, whether the cocks taken were lawfully killed or destroyed or not ; for if

they were unlawfully taken by the defendants, they are responsible, whether the cocks were afterwards destroyed or not. We do not mean, however, to suggest any doubt on this point, as to the construction of the Rev. Sts. *c.* 142, §§ 2 and 5, under which the defendants maintain that the cocks were lawfully destroyed under the direction of the court or magistrate. By these sections, any " gaming apparatus or implements, used, or kept and provided to be used, in unlawful gaming, in any gaming house," are required to be burnt or otherwise destroyed, under the direction of the court or magistrate. We think, for the reasons already given, as to the construction of § 19 of *c.* 50, that game cocks are not designated by the words " gaming apparatus or implements used in unlawful gaming." The words " implements " and " apparatus " have the same meaning, and are so defined. No one, we apprehend, ever did or ever would call a living animal an apparatus. Nor is there any reason to suppose that the legislature intended, by this statute, to authorize a magistrate to burn or destroy any living animal. If cock-fighting be a cruel game or sport, as it doubtless is, let the offenders be punished, who stimulate the fighting propensities of these animals, and who furnish them with instruments of destruction, or for the purpose of inflicting pain or causing bloodshed, which are not furnished by nature ; but why should these animals be burnt or otherwise destroyed ? This would be authorizing the cruelty which the law is intended to prevent. Life is the gift of God, not to man only, but to all animals, and it ought not to be taken away, except from necessity, or for some useful and proper purpose. We cannot therefore think that the statute was intended to authorize such an act.

Another exception to the instructions of the court to the jury was on the question of damages. The ingenious argument of the defendants' counsel, in support of this exception, is founded, we think, on a fallacy. It is assumed that, because cock-fighting is illegal, the sale of game cocks is unlawful. This is clearly not the law. Cards and dice are implements of gaming ; but the sale of them is not unlawful. We think,

therefore, that the instruction of the court on this point was perfectly correct. The measure of damages, which the plaintiff was entitled to recover, was what the cocks were worth to him as articles of merchandize or sale, whether the market for them was to be found in this Commonwealth or elsewhere. In either case, such sale would not be unlawful.

*Exceptions overruled.*